**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**GEORGE JOHNSON, JR.**                                                            **PLAINTIFF**

**V.**                      **CASE NO.: 5:12CV00216 BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]**                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Johnson, Jr., appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**      **Background**

On March 8, 2010, Mr. Johnson protectively filed for DIB, alleging disability beginning on June 26, 2008, due to depression and problems with his back, wrist, ankle, and shoulders. (Tr. 121-123, 128) Mr. Johnson's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge ("ALJ") held a hearing on August 31, 2011, at which Mr. Johnson appeared with his attorney. (Tr. 34) At the hearing, the ALJ heard testimony from Mr. Johnson and a vocational expert ("VE"). (Tr. 34-59)

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

The ALJ issued a decision on October 31, 2011, finding that Mr. Johnson was not disabled under the Act. (Tr. 19-30)  On April 17, 2012, the Appeals Council denied Mr. Johnson's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-6)

Mr. Johnson was thirty-nine years old at the time of the administrative hearing. (Tr. 38)  He had a twelfth grade education and lived with his mother. (Tr. 38)

Mr. Johnson testified that on a normal day, he would get up around 7 a.m., stretch to loosen his back, and eat breakfast. (Tr. 48)  After breakfast, he would exercise a little bit, watch television, and maybe read and listen to music. (Tr. 48)  He would help work around the house.  He could also drive. (Tr. 48)

Mr. Johnson testified that he stretched or took naproxen to relieve his pain. (Tr. 50)  He did not experience any negative side effects from his medication. (Tr. 41)  Mr. Johnson never sought treatment at a pain management clinic. (Tr. 53)  His physician said his ankles were healed and that Mr. Johnson would have to learn to cope with his pain. (Tr. 40)

At the hearing, Mr. Johnson admitted that while collecting unemployment, and certifying that he was looking for work, he did not actually look for work. (Tr. 58) He stated that he had to do it to pay child support. (Tr. 58)

2

## II. Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g) (2005).

The ALJ found that Mr. Johnson had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 21) And he found that Mr. Johnson had the following severe impairments: degenerative disc disease of the lumbar spine, status-post bilateral ankle fracture, and degenerative joint disease of the bilateral shoulders status-post surgery. (Tr. 21-23) The ALJ also found, however, that Mr. Johnson did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1526). (Tr. 23)

The ALJ determined that Mr. Johnson had the residual functional capacity ("RFC") to perform light work, with occasional lifting and carrying up to 20 pounds, frequent lifting and carrying of 10 pounds. (Tr. 23) Mr. Johnson could stand, walk, or sit for 6 hours in an 8-hour workday, limited by occasional climbing of ladders, ropes, and

scaffolds, occasional stooping, kneeling, and crouching, and frequent overhand reaching and handling. (Tr. 23-28)

The ALJ determined that Mr. Johnson's RFC would preclude performance of his past relevant work as a meat cutter, metal fabricator, and order filler. (Tr. 28) After considering VE testimony, the ALJ determined that Mr. Johnson could perform significant jobs existing in the national economy. (Tr. 28-29) Accordingly, the ALJ found that Mr. Johnson was not disabled. (Tr. 29)

### III. <u>Analysis</u>

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B. *Plaintiff's Arguments for Reversal*

Mr. Johnson argues that the ALJ's decision was not supported by substantial evidence because: (1) the ALJ erred in his assessment of Mr. Johnson's RFC; and (2) the ALJ failed to explain the weight given to the medical evidence. (#14)

C. *Residual Functional Capacity*

The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). It is the claimant's burden, however, to prove RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). Despite continuing pain, substantial evidence supports the ALJ's determination that Mr. Johnson could perform the physical demands of light work.

Mr. Johnson was injured on the job and participated in work-related physical therapy. On December 22, 2008, a work conditioning evaluation showed that Mr. Johnson had "excellent potential to obtain the goal of returning to work within the Heavy physical demand capacity level." (Tr. 276) At that time, Mr. Johnson could occasionally lift and carry at least 40 pounds and frequently lift and carry at least 30 pounds. (Tr. 277) He could frequently sit, stand, walk, climb stairs, reach, stoop, kneel, crouch, and crawl. (Tr. 277)

On January 16, 2009, Mr. Johnson was able to meet the physical demands of his heavy work, with pain after three hours of work conditioning activities. (Tr. 295) He

was able to manage his back pain with stretching and heat.  The recommendation was to return to regular work progressing from 4-6 hours to 6-8 hours as needed.  (Tr. 295)

On June 16, 2009, Mr. Johnson had excellent range of motion in his right ankle and good range of motion on the left, with slight tenderness.  (Tr. 312)  His back was tender, but without radiating symptoms and with negative straight leg raises.  (Tr. 312)

Mr. Johnson saw Jacob Strong, M.D., on July 17, 2009.  An MRI showed degenerative changes at Mr. Johnson's L5-S1 spine with an annular tear, mild L4-L5 and L5-S1 spondylosis, and questionable right L5 pars defect.  (Tr. 368)  There was no evidence of atrophy or asymmetry in Mr. Johnson's back.  (Tr. 368)  His range of motion was limited and uncomfortable with flexion and extension, but full and pain free with rotation to the right and left.  (Tr. 368)  After noting Mr. Johnson's pain, Dr. Strong recommended that Mr. Johnson continue his home exercise program and continue medium work duty.  (Tr. 369)  Mr. Johnson declined an epidural for his back pain at that time.  (Tr. 369) He was taking naproxen regularly, which helped, and hydrocodone intermittently.  (Tr. 367)

Mr. Johnson saw Dr. Strong again on August 14, 2009.  (Tr. 310-311)  Mr. Johnson was directed to continue home exercise and medium work duty.  (Tr. 311)

A physical residual functional capacity assessment, completed by state agency physicians on August 14, 2010, found that Mr. Johnson could perform a wide range of medium work.  (Tr. 336-343)

On October 13, 2010, Mr. Johnson saw Christine Scott, M.D., with complaints of pain. (Tr. 365-366) Mr. Johnson noted a history of pain and reported walking for exercise. (Tr. 365) Dr. Scott prescribed naproxen for pain and diagnosed Mr. Johnson with lumbago. (Tr. 366) Mr. Johnson saw Dr. Scott again on November 16, 2010, complaining of increased pain. (Tr. 363-364) He asked for hydrocodone, but Dr. Scott instead increased the naproxen, since Mr. Johnson had responded to it. (Tr. 363) Follow-ups noted pain and continued naproxen use. (Tr. 360)

The record clearly supports Mr. Johnson's complaints of continued pain. Despite this pain, however, substantial evidence shows that he retained the RFC to perform light work.

In addition to pain medication, Mr. Johnson took antidepressant medication for his depression. (Tr. 322-334, 370-372, 387-390) Mr. Johnson testified that, due to depression, he did not like dealing with, or being around, people. (Tr. 46) The ALJ did not find any nonexertional limitations when determining Mr. Johnson's RFC. (Tr. 23-28) The record supports the ALJ's determination that Mr. Johnson's depression did not significantly limit his mental abilities to do basic work activities. (Tr. 21-23)

On July 23, 2010, state agency psychologist Regina Pyke, Ph.D., completed a psychiatric review technique regarding Mr. Johnson's mental disorders. (Tr. 322-335) Dr. Pyke found that Mr. Johnson suffered from depression and anxiety but that they were "not severe." (Tr. 322, 325, 327) After reviewing the medical records, Dr. Pyke found

no episodes of decompensation, no restriction of daily activities, no difficulties in maintaining concentration, persistence, or pace, and only mild difficulties in maintaining social functioning. (Tr. 332, 334)

Mr. Johnson's brother-in-law reported that Mr. Johnson regularly attended church, but had a very low tolerance for people. (Tr. 161-162) Mr. Johnson reported that he could shop in stores by himself, and attend church a few times a week, but generally kept to himself. (Tr. 202-203) Mr. Johnson had no problem getting along with family, but had problems with other people who did not "like [him] because the way [he] handle[d] and [did] things." (Tr. 204) He had never been fired from a job because of problems getting along with other people. (Tr. 205)

A psychological evaluation, a psychiatric evaluation, and treatment notes evidenced minimal, if any, functional limitations related to depression. (Tr. 350-358, 371-377, 387-390) Mr. Johnson tolerated Prozac without any problems. (Tr. 371, 379) He stated that his anxiety and depression would lessen if he were more financially stable. (Tr. 388) A clinical psychologist, Steven Berger, Ph.D., found that Mr. Johnson's mood would heighten if his financial and employment instability were alleviated. (Tr. 390)

The only evidence Mr. Johnson noted in support of his argument that his depression was severe is a comment from Dr. Berger stating that Mr. Johnson's social isolation might impact his ability to get along with co-workers. (#14, at pp. 20-21) (Tr. 390) Despite this comment, substantial evidence in the record supports the ALJ's RFC

determination. Mr. Johnson did not meet his burden of showing that his depression significantly limited his mental abilities to do basic work activities.

     D.    *Medical Evidence*

Mr. Johnson argues that the ALJ failed to explain the weight given to the medical evidence. (#14) He states that reports by Dr. Brewer and Dr. Berger showed that he could not perform light work. (#14, at pp. 19-21)

As noted, the ALJ's RFC determination was supported by substantial evidence. "Substantial evidence" does not mean there was no contrary evidence. Rather, evidence is "substantial" if reasonable minds find it adequate to support the decision, even if some evidence supports an opposite conclusion. *Boettcher*, 652 F.3d at 863.

The reports by Dr. Brewer and Dr. Berger provide some evidence of additional limitations that were not in the ALJ's RFC determination. (Tr. 387-390, 391-399) Dr. Berger noted that Mr. Johnson's social isolation *might* impact his ability to get along with co-workers. (Tr. 390) This possible limitation was not supported by the overall record.

Dr. Brewer noted possible exertional limitations and a slight limp. (Tr. 394-395) Dr. Brewer found, however, that Mr. Johnson's range of motion in his neck, back, leg raises, shoulders, elbows, forearms, wrists, hips, knees, ankles, feet, hands, and fingers were all within the normal range. (Tr. 392-393) Dr. Brewer found mild weakness to normal strength in grip and pinch. Objective imaging did not evidence any acute findings. (Tr. 396-399)

Although this evidence provides some support for Mr. Johnson's argument, the overall record strongly supports the ALJ's determination that Mr. Johnson could perform light work with no nonexertional limitations.  Accordingly, the ALJ did not commit reversible error when discussing the medical record.

    E.    *Step Five Finding*

The ALJ's decision contains a significant discrepancy.  The ALJ found that Mr. Johnson had the RFC to perform light work.  (Tr. 23-28)  In his decision, however, the ALJ listed jobs requiring an RFC for medium work.  (Tr. 29)  Mr. Johnson did not raise this issue, so it is waived.  Regardless, the VE provided significant numbers of jobs in the light work category that Mr. Johnson could perform during the VE's testimony.  (Tr. 56-57)  The ALJ's error in opinion writing was harmless because the record provides significant number of jobs in the national economy that Mr. Johnson could perform.

## IV.   Conclusion

The Court has reviewed all of the evidence in the record, including the objective medical evidence, the opinions of physicians, and the hearing transcript.  There is sufficient evidence in the record as a whole to support the Commissioner's determination that George Johnson, Jr., retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, his appeal is DENIED, and the Clerk of Court is directed to close the case, this 14th day of August, 2013.

_____
UNITED STATES MAGISTRATE JUDGE